

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| T&S BRASS AND BRONZE WORKS, INC. and ENVIROPURE SYSTEMS, LLC, | § § § | |
| Plaintiffs, | § § | |
| vs. | § § | Civil Action No. 6:16-03687-MGL |
| JAMES SLANINA, LINDA BASINGER, individually and d/b/a ADVANTAGREEN, ADVANTAGO, INC., and OPUS DISTRIBUTION, INC., | § § § § § | |
| Defendants. | § § § | |

**ORDER ADOPTING AS MODIFIED THE REPORT AND RECOMMENDATION, GRANTING AS MODIFIED PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND AMENDED MOTION FOR PRELIMINARY INJUNCTION, AND GRANTING DEFENDANT LINDA BASINGER'S MOTION TO SEVER AND STAY ALL CLAIMS AND TO COMPEL ARBITRATION**

## I.    INTRODUCTION

This is an action for misappropriation of trade secrets and trademarks and related claims arising out of the business relationship between Plaintiffs and Defendants.  The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1367.

The parties have filed a number of motions in this matter.  In this Order, the Court will consider Plaintiffs' Motion for Preliminary Injunction, ECF No. 16, Plaintiffs' Amended Motion for Preliminary Injunction, ECF No. 29, and Defendant Linda Basinger's (Basinger) Motion to

Sever and Stay All Claims and to Compel Arbitration (Basinger's Motion to Compel Arbitration), ECF No. 168. The Court will address the additional motions pending in this matter in a later Order.

Having carefully considered the above-referenced motions and the numerous related briefings, the record, and the applicable law, it is the judgment of the Court the Report and Recommendation will be adopted as modified, Plaintiffs' Motion for Preliminary Injunction and Amended Motion for Preliminary Injunction will be granted as modified, and Basinger's Motion to Compel Arbitration will be granted.

## II.     FACTUAL BACKGROUND

Defendants James Slanina (Slanina) and his wife, Basinger, started a company called EnviroPure Systems, Inc. (ESI) in 2009 in a Chicago manufacturing incubator. ECF No. 38-2 ¶ 3. ESI was created to manufacture and sell a food waste disposal system developed by Slanina capable of converting food waste into non-potable water suitable to be discharged into sewer lines or used for irrigation. *Id.* ¶¶ 4-7. The patented system consists of a machine that utilizes a proprietary blend of organic nutrients known as "Biomix." ECF No. 155 ¶ 16. The systems primarily serve commercial and industrial facilities. *Id.*

Plaintiff T&S Brass and Bronze Works, Inc. (T&S) is a corporation with its principal place of business in Travelers Rest, South Carolina. *Id.* ¶ 1. T&S created Plaintiff EnviroPure Systems, LLC (EnviroPure) in 2012 to acquire the assets, rights, and certain liabilities of ESI. *Id.* ¶ 11. EnviroPure acquired ESI in December 2012, *id.* ¶ 12, and T&S established a location for EnviroPure next to the main T&S facility in Travelers Rest, South Carolina, *id.* ¶ 14. Slanina became president of EnviroPure, *id.* ¶ 13, and former defendant James Taylor (Taylor) became

head of operations and engineering, ECF No. 1-7 at 1. Basinger did not become an employee of EnviroPure. ECF No. 21-1 ¶ 3.

In connection with EviroPure's acquisition of ESI, Slanina executed a Covenants Agreement with T&S on December 14, 2012 (Slanina's Covenants Agreeement), ECF No. 1-6, and Basinger executed a Covenants Agreement with T&S on December 17, 2012 (Basinger's Covenants Agreement), ECF No. 1-8. Slanina's and Basinger's Covenants Agreements include provisions prohibiting them from disclosing confidential informaton of T&S and its affiliates/subsidiaries, soliciting customers or employees of T&S and its affiliates/subsidiaries, and competing with the business of T&S and its affiliates/subsidiaries. *See* ECF Nos. 1-6 at 3-4, 1-8 at 3-4. The provisions in Slanina's Covenants Agreement barring him from soliciting customers or employees of T&S and competing with T&S expire two years after the termination of his employment, ECF No. 1-6 at 4, while the corresponding provisions in Basinger's Covenants Agreement expire two years after T&S' acquisition of ESI, ECF No. 1-8 at 3-4. The confidentiality provisions in both Slanina's and Basinger's Covenants Agreements have no expiration date. ECF Nos. 1-6 at 3-4, 1-8 at 3.

Plaintiffs' complaint asserts Basinger does business as Advantagreen. ECF No. 155 ¶ 5. On February 5, 2015, Advantagreen and EnviroPure entered into a National Market Sales Agreement (Agreement) for Advantagreen to serve as a sales representative/distributor for EnviroPure products. ECF No. 168-1. Basinger executed the Agreement on behalf of Advantagreen. *See id.*

The details of the formation, purpose, and operation of Defendants Advantago, Inc. (Advantago) and Opus Distribution, Inc. (Opus) are contested, but Advantago and Opus are companies affiliated with Slanina and/or Basinger and doing business in South Carolina. *See*

ECF No. 155 ¶¶ 6-7, 19, 22, 34. According to Basinger, Advantago is an independent sales representative agency she started, which does business as Advantagreen. ECF No. 21-1 ¶ 8. Basinger sells two other product lines through Advantagreen that are unrelated to EnviroPure products. *Id.* ¶¶ 11, 13.

Claude Theisen, CEO of T&S, suspended Slanina's and Taylor's employment with Plaintiffs on November 11, 2016, after observing what he perceived as "strange issues with orders and shipments." ECF No. 1-2 ¶¶ 10, 13. Plaintiffs terminated Slanina's and Taylor's employment on November 18, 2016. ECF Nos. 38-2 ¶ 70, 42-1 ¶ 11.


## III. PROCEDURAL HISTORY

The procedural history in this case is complex and extensive. For purposes of efficiency, the Court will outline only the procedural history relevant to the motions addressed in this Order.

Plaintiffs filed their initial complaint on November 20, 2016. ECF No. 1. It named Slanina, Taylor, Basinger, and Advantagreen as defendants and asserted a number of statutory and common law claims for misappropriation of trade secrets and trademarks, breach of contract, fraud, and related matters. *See id.*

On November 21, 2016, Plaintiffs filed a motion for a temporary restraining order (Plaintiffs' First Motion for TRO). ECF No. 5. The Court referred Plaintiffs' First Motion for TRO to the United States Magistrate Judge (Magistrate Judge) on November 22, 2016. ECF No. 10. On that same day, the Magistrate Judge granted Plaintiffs' First Motion for TRO in part, entered a temporary restraining order against Defendants (Initial TRO), and set a hearing for November 30, 2016. ECF No. 11. The Magistrate Judge entered the Initial TRO ex parte. *See id.*

Plaintiffs filed their Motion for Preliminary Injunction on November 27, 2016, seeking the same relief they requested in their First Motion for TRO. ECF No. 16. The Court referred Plaintiffs' Motion for Preliminary Injunction to the Magistrate Judge on November 28, 2017. ECF No. 17. Defendants Slanina, Basinger, and Advantago d/b/a Advantagreen, whom they assert was improperly identified in the complaint as Advantagreen, filed a declaration of Basinger on November 29, 2016, in opposition to Plaintiffs' Motion for Preliminary Injunction. ECF No. 21. Defendants assert in numerous filings Advantagreen was improperly identified in Plaintiffs' pleadings. Hereafter, the Court will identify Defendants based on the name specified in the relevant filing. Plaintiffs filed additional documents in support of their Motion for Preliminary Injunction on November 30, 2016, ECF No. 22.

Also on November 30, 2016, the Magistrate Judge held a hearing at which counsel for all parties were present. *See* ECF No. 23. That same day, the Magistrate Judge entered an order in accordance with the parties' agreement modifying the Initial TRO and extending it until December 12, 2016 (Revised TRO). ECF No. 25. The Magistrate Judge also scheduled a hearing for the Motion for Preliminary Injunction for December 12, 2016. *Id.*

Plaintiffs filed their Amended Motion for Preliminary Injunction on December 4, 2016, ECF No. 29, which the Court referred to the Magistrate Judge, ECF No. 39. The Magistrate Judge cancelled the hearing set for December 12, 2016, and rescheduled a hearing on the Motion and Amended Motion for Preliminary Injunction for December 13, 2016. ECF Nos. 32, 34. By agreement of the parties, the Magistrate Judge extended the Revised TRO until the December 13, 2016, hearing. ECF No. 31.

On December 12, 2016, Defendants Slanina, Basinger, and Advantago d/b/a Advantagreen filed a response in opposition to Plaintiffs' Motion and Amended Motion for

Preliminary Injunction, ECF No. 38, and a declaration of Taylor, ECF No. 42.  Plaintiffs filed additional materials in support of their Amended Motion for Preliminary Injunction later that same day.  ECF No. 56.  On December 13, 2016, Defendants Slanina, Basinger, and Advantago d/b/a Advantagreen filed a declaration of James P. Vojtech in opposition to Plaintiffs' Motion for Preliminary Injunction.  ECF No. 46.

The Magistrate Judge held a hearing on Plaintiffs' Motion and Amended Motion for Preliminary Injunction on December 13, 2016, as well as other motions pending at the time that are irrelevant to the matters presently before the Court.  *See* ECF No. 45.  That same day, the Magistrate Judge issued a text order stating he would submit a Report and Recommendation (Report) on Plaintiffs' Motion and Amended Motion for Preliminary Injunction to the Court and extending the Revised TRO until a ruling from the Court on Plaintiffs' Motion and Amended Motion for Preliminary Injunction.  ECF No. 47.

On December 14, 2016, Slanina filed a Motion to Hold Open the Record on Plaintiffs' Motion for Preliminary Injunction (Slanina's Motion to Hold Open the Record), in which he requested the Court hold open the record on Plaintiffs' preliminary injunction motions until December 19, 2016, to allow Slanina to submit additional material in response to documents filed by Plaintiffs the night before the December 13, 2016, hearing.  ECF No. 50.  The Court referred Slanina's Motion to Hold Open the Record to the Magistrate Judge, ECF No. 52, and the Magistrate Judge granted the Motion on December 15, 2016.  ECF No. 51.

Also on December 15, 2016, Plaintiffs, with the consent of Taylor, filed a motion for the entry of a consent order entering a permanent injunction against Taylor and dismissing the claims against him without prejudice, ECF No. 53, which the Court granted on December 16, 2016, ECF No. 54.  Taylor was thus terminated as a party on December 16, 2016.

Plaintiffs filed additional briefing and materials in support of their Amended Motion for Preliminary Injunction on December 19, 2016, ECF No. 62, which included a supplemental declaration of Taylor, ECF No. 62-1. Defendants also filed further briefing and materials in opposition on that same day. ECF No. 64.

On December 20, 2016, the Magistrate Judge issued a Report recommending the Court grant Plaintiffs' Motion and Amended Motion for Preliminary Injunction and enjoin Defendants as outlined in the Report. ECF No. 66. Plaintiffs subsequently filed more materials in support of their Motion and Amended Motion for Preliminary Injunction. ECF Nos. 87, 97.

Plaintiffs filed a Motion for Second Temporary Restraining Order, for an Emergency Hearing with Testimony, and for Sanctions (Plaintiffs' Second Motion for TRO) on December 27, 2016, in which they requested the Court further enjoin Defendants and require Slanina and Basinger to appear in court and answer questions under oath. ECF No. 72. The Court referred Plaintiffs' Second Motion for TRO to the Magistrate Judge, ECF No. 75, and Plaintiffs filed additional materials in support of the motion on December 28 and 29, 2016, ECF Nos. 74, 76. On December 29, 2016, the Magistrate Judge issued a Report recommending the Court deny Plaintiffs' Second Motion for TRO. ECF No. 77. The Court ultimately adopted the Magistrate Judge's December 29, 2016, Report over Plaintiffs' objection and denied Plaintiffs' Second Motion for TRO. ECF No. 158.

Plaintiffs filed an amended complaint on January 4, 2017, naming Slanina, Basinger, Advantago d/b/a Advantagreen, and Opus as defendants. ECF No. 88. On February 7, 2017, Plaintiffs filed a motion seeking leave to present additional information in support of their Motion and Amended Motion for Preliminary Injunction and Second Motion for TRO (Plaintiffs' Motion to Supplement the Record). ECF No. 135. Slanina opposed Plaintiffs'

Motion to Supplement the Record, and the parties fully briefed the Motion. *See* ECF Nos. 148, 149.

With leave of the Court, see ECF No. 152, Plaintiffs filed a second amended complaint (Complaint) on March 2, 2017, ECF Nos. 155. The Complaint names Slanina, Basinger, individually and d/b/a Advantagreen, Advantago, and Opus as defendants. *See* ECF No. 155. It asserts claims for violation of the Defend Trade Secrets Act of 2016 (Defend Trade Secrets Act), 18 U.S.C. §§ 1832-39, violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-68, cybersquatting, false designation of origin, violation of the South Carolina Trade Secrets Act, S.C. Code Ann. §§ 39-8-10 to 130, violation of the South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10 to 180, interference with contract, interference with prospective contractual relations, breach of contract, breach of contract accompanied by a fraudulent acts, breach of fiduciary duty, breach of the duty of loyalty, unjust enrichment/constructive trust, negligence/gross negligence, equitable indemnification, money had and received, conversion, and trespass to chattels. *See id.* Slanina, Advantago, and Opus answered the Complaint on March 16, 2017. ECF No. 160.

Basinger filed her Motion to Compel Arbitration on April 6, 2017, in which she asserts all of Plaintiffs' claims against her are subject to mandatory arbitration. ECF No. 168. Plaintiffs filed a response in opposition to Basinger's Motion on April 10, 2017, ECF No. 173, and Basinger replied on April 13, 2017, ECF No. 174.

The Court, having been fully briefed on the relevant issues, is now prepared to discuss the merits of Plaintiffs' Motion for Preliminary Injunction, Amended Motion for Preliminary Injunction, and Basinger's Motion to Compel Arbitration. The Court will discuss each of the motions in turn.

## IV.     BASINGER'S MOTION TO COMPEL ARBITRATION

Because Basinger's Motion to Compel Arbitration is potentially dispositive of the claims against her, the Court will consider it first.

### A.     Standard of Review

The Federal Arbitration Act (FAA) provides a federal district court with the authority to enforce an arbitration agreement by compelling parties to arbitrate their dispute.  9 U.S.C. § 4 ("A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28 . . . for an order directing that such arbitration proceed in the manner provided for in such agreement.").  States are vested with the same authority.  *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 (1983).  Section 2 of the FAA applies to any "contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract," and it provides the written agreements to arbitrate contained in such contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The United States Supreme Court has noted a strong federal policy favoring arbitration.  *See Moses H. Cone*, 460 U.S. at 24-25.

The Fourth Circuit Court of Appeals recognized the FAA's strong federal policy favoring arbitration agreements in *Adkins v. Labor Ready, Inc.*, 303 F.3d 496 (4th Cir. 2002), in which the court stated, "A district court . . . has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview."  *Id.* at 500 (citing *United States v. Bankers Ins. Co.*, 245 F.3d 315, 319 (4th Cir. 2001)).  The court further

stated:

> In the Fourth Circuit, a litigant can compel arbitration under the FAA if he can demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute."

*Id.* at 500-01 (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)).  Because "arbitration constitutes a more efficient dispute resolution process than litigation . . . 'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.'"  *Id.* at 500 (quoting *Volt Info. Scis., Inc. v. Bd. of Tr. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475-76 (1989) (citing *Hightower v. GMRI, Inc.*, 272 F.3d 239, 241 (4th Cir. 2001))).

**B.  Contentions of the Parties**

Basinger argues Plaintiffs' claims against her are subject to mandatory arbitration under the FAA pursuant to the arbitration provision in Section 10.4.1 of the February 5, 2015, Agreement between Advantagreen and EnviroPure.  Basinger maintains she can enforce the arbitration provision in the Agreement because she is an agent of Advantagreen and because, according to the Complaint, she did business as Advantagreen and is therefore one and the same as Advantagreen.  Although Basinger contends Plaintiffs must arbitrate all of their claims against her, she concedes Plaintiffs may seek injunctive relief outside of arbitration to enforce the obligation in the Agreement to protect Plaintiffs' trade secrets and confidential information and to obtain specific performance of the Agreement.

Plaintiffs insist they should not be required to arbitrate their claims against Basinger.  In support of their position, Plaintiffs assert Basinger is not a party to the Agreement, and no party to the Agreement has moved for arbitration.  Plaintiffs explain Basinger has attested Advantago

does business as Advantagreen. They also state Advantago represents in its answer to the Complaint it does business as Advantagreen. Plaintiffs' argument appears to be, because Defendants have previously taken the position Advantago does business as Advantagreen, Basinger is unable to enforce an arbitration provision in an agreement between Plaintiffs and Advantagreen.

Plaintiffs also aver their claims fall outside the scope of the arbitration provision at issue because, with the possible exception of the unjust enrichment claim, the claims in the Complaint are unrelated to the Agreement. Similarly, Plaintiffs maintain their claims for breach of contract and breach of contract accompanied by fraudulent acts are not subject to arbitration because they relate to Basinger's 2012 Covenants Agreement, not the 2015 Agreement containing the arbitration provision. Plaintiffs proffer the 2015 Agreement fails to supersede the 2012 Covenants Agreement. Plaintiffs further note Basinger's Covenants Agreement provides Plaintiffs will be entitled to injunctive relief by a court of competent jurisdiction, which Plaintiffs argue clarifies the Court has jurisdiction.

Plaintiffs asseverate, even if the ultimate resolution of their claims is subject to arbitration, the Court should exercise its discretion to provide injunctive relief to maintain the status quo. Plaintiffs point out the arbitration provision specifically allows Plaintiffs to obtain injunctive relief without proceeding to arbitration.

Lastly, Plaintiffs urge the Court to deny Basinger's Motion to Compel Arbitration outright on the ground she failed to adequately explain in her motion, ECF No. 168, why she is entitled to compel arbitration, and Plaintiffs pontificate the Court should require Basinger to show she is capable of paying the costs of arbitration before sending any part of this case to arbitration.

## C.    Discussion and Analysis

As set forth above, a party seeking to compel arbitration under the FAA must prove:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.

*Adkins*, 303 F.3d at 500-01 (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)).

It is uncontested there is a dispute between Basinger and Plaintiffs that Plaintiffs have refused to arbitrate, which satisfies the first and fourth factors for compelling arbitration.  It is likewise undisputed the Agreement containing the arbitration provision at issue relates to interstate commerce, for the Agreement concerns the sale of EnviroPure products in a territory defined as the United States.  *See* ECF No. 168-1 at 3.  Hence, the third requirement is also satisfied.  Therefore, the only remaining issue is whether the second requirement for compelling arbitration is satisfied—whether there is a written arbitration provision purporting to cover the dispute between Basinger and Plaintiffs.

Section 10.4.1 of Attachment B to the February 5, 2015 Agreement between Advantagreen and EnviroPure provides, in relevant part:

> Except as specifically stated otherwise in this Section 10.3.1 [sic], any controversy or claim (including without limit those arising under or conferred by statutes) arising under or in relation to this Agreement, or the breach thereof, or the relations between Representative [Advantagreen] and Company [EnviroPure] shall be finally settled by individual arbitration . . . .  In addition to their right of arbitration, Company shall have the right to obtain injunctive relief to enforce or prevent violations of this Agreement by Representative, to enforce the obligations of the Representative to protect the trade secrets and confidential information of Company and to obtain specific performance of this Agreement by Representative (in each case without posting any bond or deposit) in any court of competent jurisdiction in the state of South Carolina, without proceeding to arbitration.

*Id.* at 8-9.  Thus, under the express terms of this section of the Agreement, any controversy or

claim pertaining to the Agreement or the relations of EnviroPure and Advantagreen is subject to mandatory arbitration, except EnviroPure may obtain certain injunctive relief outside of arbitration.

The Court rejects Plaintiffs' argument Basinger is unable to enforce the arbitration provision because she is not a party to the Agreement. The Agreement is between Advantagreen and EnviroPure, and Basinger executed it on behalf of Advantagreen. *See id.* at 2. Plaintiffs plead in their Complaint "Basinger did business as 'Advantagreen,'" ECF No. 155 ¶ 5, and refer to defendant "Basinger/Advantagreen" throughout the Complaint, see, e.g., *id.* ¶¶ 18, 19, 21, 24, 26. Thus, according to Plaintiffs' own allegations, Advantagreen and Basinger are one and the same. *See also Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 634 n.2 (4th Cir. 2002) (explaining using a trade name for a business does not result in two separate entities).

The Court also rejects Plaintiffs' contention Basinger cannot compel arbitration because of Defendants' previous assertions Advantago does business as Advantagreen. As explained above, Plaintiffs' own Complaint alleges Basinger does business as Advantagreen. In light of Plaintiffs' own allegations, it is immaterial whether Defendants have previously alleged Advantago does business as Advantagreen. Further, Plaintiffs fail to allege or explain why Basinger and Advantago are unable both to do business as Advantagreen. Because Basinger and Advantagreen are not distinct from each other, Basinger can enforce the arbitration provision in the Agreement between Advantagreen and EnviroPure.

The Court is likewise is unpersuaded by Plaintiffs' position their claims against Basinger fall outside the scope of the arbitration provision because they are unrelated to the Agreement. By its terms, the arbitration provision covers all claims involving the "relations" between Advantagreen and EnviroPure. *See* ECF No. 168-1 at 8. The provision therefore covers a much

broader range of claims than those simply relating to the Agreement. Plaintiffs' claims against Basinger concern the relations between Basinger/Advantagreen and EnviroPure, and, as explained above, Plaintiffs allege Basinger does business as Advantagreen and is therefore one and the same as Advantagreen. *See* ECF No. 155. Accordingly, Plaintiffs' claims against Basinger arise out of the relations between Advantagreen and EnviroPure and are covered by the arbitration provision.

Similarly, even though Plaintiffs' breach of contract claims arise out of Basinger's 2012 Covenants Agreement rather than the 2015 Agreement containing the arbitration provision, they are also covered by the arbitration provision because they concern the relationship between Basinger/Advantagreen and EnviroPure. Contrary to Plaintiffs' assertion, Paragraph 6 of Basinger's Covenants Agreement, which provides T&S is entitled to injunctive relief by a court of competent jurisdiction in the event of Basinger's actual or threatened breach of certain terms of the Covenants Agreement, see ECF No. 1-8 at 4, fails to exempt Plaintiffs' breach of contract claims from the scope of the arbitration provision. Paragraph 6 of the Covenants Agreement is consistent with the arbitration provision because the arbitration provision specifically allows EnviroPure to obtain certain injunctive relief without proceeding to arbitration, see ECF No. 168-1 at 9. Thus, the Agreement and the Covenants Agreement can both be enforced, and the Court need not decide whether the Agreement supersedes the Covenants Agreement. Therefore, the Court holds Plaintiffs' breach of contract claims against Basinger are covered by the arbitration provision.

Because Basinger is entitled to enforce the arbitration provision in the Agreement and the provision covers Plaintiffs' claims, the Court holds Plaintiffs are required to arbitrate their claims against Basinger. Accordingly, the Court will grant Basinger's Motion to Compel Arbitration.

Plaintiffs must arbitrate their claims against Basinger, and such claims are stayed pending final resolution of them in arbitration. In so holding, the Court declines Plaintiffs' invitation to reject Basinger's Motion to Compel Arbitration on the basis she failed to adequately explain in it why she is entitled to compel arbitration and to require Basinger to show she is capable of paying for arbitration. These suggestions of Plaintiffs are conclusory and baseless.

Although the Court will require Plaintiffs to arbitrate their claims against Basinger, it is uncontested Plaintiffs may seek to obtain certain injunctive relief outside of arbitration under the Agreement. Furthermore, the Court agrees it should entertain Plaintiffs' request for injunctive relief against Basinger in order to preserve the status quo pending arbitration. *See Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 376 (4th Cir. 2012) ("[W]here a dispute is subject to mandatory arbitration . . . a district court has the discretion to grant a preliminary injunction to preserve the status quo pending the arbitration . . . ." (quoting *Merrill Lynch, Pierce, Fenner & Smith v. Bradley*, 756 F.2d 1048, 1053-54 (4th Cir. 1986))). Accordingly, the Court will consider Plaintiffs' request for a preliminary injunction against Basinger, which is discussed in detail below, even though it will refer their claims against her to arbitration.

## V. PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND AMENDED MOTION FOR PRELIMINARY INJUNCTION

The Court will now turn to Plaintiffs' Motion for Preliminary Injunction and Amended Motion for Preliminary Injunction, which are before the Court for review of the Magistrate Judge's Report suggesting the Court grant the motions and enjoin Defendants as outlined in the Report. The Report was made in accordance with 28 U.S.C. § 636 and Local Civil Rule 73.02 for the District of South Carolina.

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The Court is charged with making a de novo determination of those portions of the Report to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Magistrate Judge filed the Report on December 20, 2016. ECF No. 66. Defendants filed objections to the Report on December 29, 2016, ECF No. 78, to which Plaintiffs responded on January 3, 2017, ECF No. 79. On January 10, 2017, Defendants filed a reply to Plaintiffs' response to their objections, ECF No. 103, and Plaintiffs filed a sur-reply on January 11, 2017, ECF No. 104. The Court has carefully reviewed Defendants' objections and, with the exception of one, holds them to be meritless.

Defendants set forth fourteen objections to the Report. Under 28 U.S.C. § 636(b)(1), a district court is required to conduct a de novo review of those portions of the Magistrate Judge's Report to which a specific objection has been made. The Court need not conduct a de novo review, however, "when a party makes general and conclusory objections that do not direct the court to a specific error in the [Magistrate Judge's] proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982); *see* Fed. R. Civ. P. 72(b). Thus, the Court will address each specific objection to the Report in turn. As provided above, however, the Court need not—and will not—address any of Defendants' arguments that fail to point the Court to alleged specific errors the Magistrate Judge made in the Report.

Defendants first contend the Magistrate Judge improperly granted the Initial TRO on an ex parte basis, and Plaintiffs' ex parte submissions created a negative first impression of

Defendants unsupported by evidence. Defendants' argument is inapposite. The Initial TRO and the requested preliminary injunction at issue here are separate orders, and the propriety of granting the Initial TRO, on an ex parte basis or otherwise, is irrelevant to whether a preliminary injunction is now warranted. Defendants' suggestion the Magistrate Judge failed to objectively consider the matters before him is utterly unsupported, and thus the Court overrules Defendants' first objection.

Defendants next argue the Magistrate Judge erred in considering certain documents filed by Plaintiffs after the December 13, 2016, hearing, including the Supplemental Declaration of Taylor, ECF No. 62-1, because Slanina's Motion to Hold Open the Record, which the Magistrate Judge granted, ECF No. 51, gave Defendants permission to file only additional materials to rebut a previous filing of Plaintiffs. Defendants further insist Taylor's Supplemental Declaration fails to provide convincing evidence on relevant issues.

The Magistrate Judge had the discretion to consider any filings offered by the parties, and the Court holds he acted reasonably in considering the documents filed by Plaintiffs after the December 13, 2016, hearing. Defendants' arguments regarding the value of Taylor's Supplemental Declaration are nothing more than a rehashing of their prior arguments, and the Magistrate Judge adequately explained the purpose for which he considered Taylor's Supplemental Declaration, see ECF No. 66 at 10. Moreover, Taylor's Supplemental Declaration was merely one piece of evidence considered by the Magistrate Judge. *See id.* at 6-15. The Court agrees with the Magistrate Judge's weighing of the evidence. Accordingly, the Court holds Defendants' second objection is unconvincing.

In Defendants' third objection, they assert the Magistrate Judge's finding Defendants have disclosed Plaintiffs' trade secrets to the detriment of Plaintiffs is unsupported by the record.

Defendants claim Slanina's disclosure of EnviroPure's financial information to prospective investors was intended to benefit T&S by attracting parties to invest in or purchase EnviroPure. Defendants further represent Slanina's disclosures were accompanied by appropriate non-disclosure agreements or confidentiality statements, and they maintain there is no evidence any of the entities to whom Slanina disclosed the confidential information have ever misused it.

Defendants' assertion Slanina's disclosure of financial information to potential investors was meant to benefit Plaintiffs was considered and rejected by the Magistrate Judge, see *id.* at 6-7, and the Court agrees with the Magistrate Judge's well-reasoned conclusion. As the Magistrate Judge explained, Slanina's emails and the circumstances surrounding the disclosures belie Defendants' claim. *See id.* By way of just one example, Slanina told an individual named Laura Churcher he did not want the fact a company was moving forward with implementing EnviroPure technology in stores to "deter [his] ability to find a solution to move the company away from the existing management," ECF No. 29-13 at 3, and he later divulged highly confidential information, including Plaintiffs' "sales pipeline," to her, ECF Nos. 1-9 ¶¶ 9-11, 29-14 at 1-2. Moreover, Slanina failed to obtain permission to disclose Plaintiffs' trade secrets. ECF No. 1-9 ¶ 12. In light of such evidence, Defendants' claim Slanina was attempting to help Plaintiffs in disclosing their sensitive information is incredible. Furthermore, when considering the totality of the evidence, the existence of non-disclosure agreements or the presence of a confidentiality statement on the confidential materials shared with others is insufficient to prove Defendants' doubtful claim.

Likewise, the suggestion none of the recipients of Plaintiffs' confidential information have misappropriated the information is indeterminate. Evidence of Defendants' unauthorized disclosure of Plaintiffs' trade secrets demonstrates a likelihood of success on the merits for

Plaintiffs' claims regardless of whether it is proven the trade secrets have been misused by others at this point. Additionally, Defendants' suggestion ignores evidence another recipient of Plaintiffs' confidential information used the information to solicit business from existing EnviroPure customers with Slanina's blessing. *See* ECF No. 22-4. Accordingly, the Court rejects Defendants' third objection.

Defendants aver in their fourth objection the Magistrate Judge's conclusion Defendants attempted to manipulate the timing of a sale of EnviroPure to minimize the price is insufficient to warrant a preliminary injunction. Defendants stress Plaintiffs have suffered no harm and cannot establish a threat of irreparable harm from such conduct because no sale of EnviroPure has occurred. Defendants also proclaim there is no evidence Slanina benefitted from the conduct.

Defendants appear to misunderstand the relevant portion of the Report. The Magistrate Judge's conclusion Defendants attempted to manipulate the timing of a sale of EnviroPure supported his determination Plaintiffs have satisfied the preliminary injunction requirement of demonstrating a likelihood of success on the merits of their claims. It is of no significance whether Plaintiffs have suffered damages from Defendants' machinations at this time. It is likewise immaterial whether Slanina has realized any personal benefit. Plaintiffs are not required to wait until they are irreparably harmed to obtain injunctive relief. Therefore, the Court holds Defendants' fourth objection to be meritless.

Defendants profess in their fifth objection the Magistrate Judge's suggestion Defendants have pursued their own business interests with a company in the United Kingdom called X-Met to the detriment of Plaintiffs is lacking in support. Defendants emphasize X-Met had a distributorship agreement with EnviroPure beginning in October 2015, which did not violate EnviroPure's preexisting distributorship agreement with another company in the United

Kingdom called First Choice. Defendants insist X-Met pursued customers for Plaintiffs' benefit, not Defendants' personal interests.

The Report sets forth ample evidence to support the Magistrate Judge's conclusion the Defendants pursued their own business interests in their dealings with X-Met at Plaintiffs' expense. *See* ECF No. 66 at 7-8. Defendants fail to explain how their assertion EnviroPure's agreement with X-Met did not violate its preexisting agreement with First Choice proves the Magistrate Judge's determination is in error. Furthermore, the Magistrate Judge explained the evidence reveals Slanina executed the agreement with X-Met on behalf of EnviroPure, and he and Basinger provided Karen Wordsworth (Mrs. Wordsworth) and Daniel Wordsworth (Mr. Wordsworth) (collectively the Wordsworths), the operators of X-Met, with EnviroPure's logo and confidential information, all without informing Plaintiffs of any dealings with X-Met/the Wordsworths and while EnviroPure already had a distributor in the United Kingdom. *See id.* at 7-8. The Magistrate Judge also noted Slanina encouraged X-Met/the Wordsworths to solicit business from EnviroPure's existing customers. *See id.* When considered as a whole, this evidence fully supports the Magistrate Judge's suggestion Defendants pursued their own business interests with X-Met/the Wordsworths to the detriment of Plaintiffs, and Defendants' conclusory allegations to the contrary are unavailing. Thus, the Court rejects Defendants' fifth objection.

In Defendants' sixth and seventh objections, they avow the Magistrate Judge misconstrued evidence relating to a test machine and Biomix Slanina shipped to the United Kingdom for one of X-Met's customers. The Magistrate Judge highlighted inconsistencies between Slanina's account of the test machine and Mrs. Wordsworth's, see *id.* at 8, but Defendants argue Mrs. Wordsworth's representations about the test machine were technically

correct. Defendants further claim, even if Mrs. Wordsworth exaggerated about the test machine to a prospective customer, she was doing so in an attempt to solicit business for Plaintiffs. Defense also assert it is insignificant the invoices for the test machine and Biomix were absent from Plaintiffs' accounts receivable system. The Court is unpersuaded.

The Magistrate Judge considered the evidence regarding the test machine and Biomix Slanina sent to the United Kingdom when determining Defendants pursued their own business interests with X-Met to the detriment of Plaintiffs. *See id.* at 7-9. As explained above, the Court agrees the totality of the evidence supports the conclusion Defendants pursued their own interests in dealing with X-Met/the Wordsworths to Plaintiffs' disservice, and the evidence regarding the test machine and Biomix sent to the United Kingdom contributes to this conclusion. The Magistrate Judge thoroughly explained the basis for his conclusion, see *id.* at 8-9, and the Court agrees with the Magistrate Judge. Defendants' attempt to once again explain suspicious circumstances surrounding their dealings with X-Met is unpersuasive, particularly in light of the entire context of their interactions with X-Met and the Wordsworths. The Court therefore overrules Defendants' sixth and seventh objections.

Defendants urge in their eighth objection the Magistrate Judge's finding OMPECO, an Italian organization with whom Defendants interacted, is competitive with EnviroPure is unsupported by any competent evidence. Defendants asseverate the Magistrate Judge improperly relied on an OMPECO brochure in reaching his conclusion because the brochure was unsubstantiated by any affidavit or other testimony. Defendants further claim the determination OMPECO is a competitor of EnviroPure is directly contradicted by the evidence they presented to the contrary, which they re-summarize in their objection.

 Defendants' contention there is no competent evidence in the record to demonstrate

OMPECO is competitive with EnviroPure ignores reality. The OMPECO brochure provided by Plaintiffs shows that, like EnviroPure machines, OMPECO machines treat food waste. ECF No. 56-3 at 1-4. Although Defendants now suggest a proper foundation for the brochure is lacking, they have put forth no reason to doubt its authenticity and indeed have failed to even allege the information contained in it is inaccurate. Thus, it was reasonable for the Magistrate Judge to rely on the brochure. Taylor's supplemental declaration provides additional evidence OMPECO is competitive with EnviroPure. *See* ECF No. 62-1 ¶¶ 2-5. Moreover, the issue of whether OMPECO and EnviroPure are competitors was discussed extensively at the December 13, 2016, hearing, and the Magistrate Judge considered and rejected the same evidence and arguments Defendants rely on in their objection. *See* ECF No. 63 at 108-125. The Court agrees with the Magistrate Judge's interpretation and weighing of the relevant evdence. Accordingly, the Court rejects Defendants' eighth objection.

Defendants complain in their ninth objection the Magistrate Judge "unfairly found" Slanina misrepresented his involvement with OMPECO. They represent Slanina has been "completely forthright in describing that he helped his wife, Ms. Basinger, in negotiating the OMPECO contract for Advantagreen." ECF No. 78 at 7. Defendants dispute the evidence relied upon by the Magistrate Judge shows Slanina was acting in a nefarious manner in dealing with OMPECO.

As an initial matter, the Court notes Defendants fail to specify to which precise portion of the Report they object. It appears Defendants object to the Magistrate Judge's suggestion "Slanina's credibility has been greatly diminished by his effort to minimize his involvement with OMPECO." ECF No. 66 at 11. The Court agrees with the Magistrate Judge.

Slanina has downplayed his involvement with OMPECO throughout this case by

claiming his interactions with OMPECO were merely to assist Basinger's negotiations with them, see, e.g., ECF No. 38-1 ¶¶ 64-67, yet the evidence strongly suggests Slanina has been deeply involved with OMPECO personally, not simply assisting Basinger. By way of example, Slanina met with principals of OMPECO without Basinger while traveling in Europe. *See* ECF No. 29-10 at 1-2. He also exchanged numerous emails with Linda Nocita of OMPECO about his distributing, installing, and servicing OMPECO machines with a colleague, and Basinger was not copied on these emails. ECF No. 56-2. Slanina's interactions with OMPECO were discussed at length during the December 13, 2016, hearing, and the Magistrate Judge explained he found Slanina's credibility weakened by his affidavit and continued assertions his interactions with OMPECO were only to assist Basinger despite contradictory evidence. *See* ECF No. 63 at 109-122. The Court concurs with the Magistrate Judge's interpretation of the evidence. Slanina's continued refusal, even in Defendants' ninth objection, to acknowledge the extent of his involvement with OMPECO, despite evidence revealing such, corroborates the Magistrate Judge's opinion Slanina's credibility is doubtful. Thus, the Court holds Defendants' ninth objection is without merit.

In Defendants' tenth objection, they argue the Magistrate Judge erred in finding Defendants acted in their own interests and to the detriment of Plaintiffs in shipping EnviroPure equipment to a warehouse in Ohio. Defendants stress, regardless of whether the Court believes it was a wise business decision for Defendants to ship certain equipment to Ohio, this is in inadequate basis for granting a preliminary injunction. Defendants reiterate there is no evidence they have benefited from shipping the equipment to Ohio, and they assert Plaintiffs are free to make arrangements for the equipment through the Ohio warehouse.

Defendants' argument is unconvincing. The Magistrate Judge astutely pointed out Defendants' explanation for sending EnviroPure equipment to a warehouse in Ohio makes no sense. *See* ECF No. 66 at 11-12. The Court agrees with the Magistrate Judge's analysis, and it is unnecessary for the Court to recount the Magistrate Judge's explanation here. Like the contentions set forth in Defendants' third, fifth, sixth, and seventh objections, Defendants are once again attempting to refute a conclusion of the Magistrate Judge in isolation. The totality of the evidence, however, reveals Defendants acted in their own interests to Plaintiffs' loss, and Defendants' shipment of equipment to Ohio is one more example of such. Additionally, Defendants' assertion there is no evidence they have benefited from shipping equipment to Ohio is irrelevant for the same reasons explained in connection with Defendants' fourth objection: there is no requirement Plaintiffs wait to obtain injunctive relief until Defendants personally benefit from their behavior and cause Plaintiffs harm. Defendants' tenth objection is therefore overruled.

Defendants avow in their eleventh and twelfth objections Paragraphs 5 and 7 of the Magistrate Judge's recommended preliminary injunction are improper. These paragraphs of the suggested preliminary injunction would enjoin Defendants from:

> 5. Conducting any business with, assisting, consulting with, or communicating about the food disposal industry with Karen or Daniel Wordsworth, X-Met, Bond of London, or OMPECO or any employees, agents, or affiliates thereof.
> . . . .
>
> 7. Entering into any employment relationship with any person or entity for the purpose of developing, manufacturing, or selling any food disposal systems or related products without leave of court and upon such conditions as the court may impose under the circumstances. This prohibition is based on this court's finding of actual misappropriations and disclosures and the continued threat of the same and not based merely on the knowledge the defendants hold. 18 U.S.C. § 1836(3)(A)(i)(I) [sic].

Further, the court finds that each defendant is "a natural person who is a citizen or permanent resident alien of the United States, or an organization organized under the laws of the United States or a State or political subdivision thereof" and "an act in furtherance of the offense was committed in the United States." *Id.* § 1837. Accordingly, each restriction imposed in the order applies both within and outside of the territory of the United States.

ECF No. 66 at 16-17.

Defendants urge in their eleventh objection these suggested provisions are improper because they would prohibit Defendants from engaging in certain activities outside of the United States even though the non-compete provision in Slanina's Covenants Agreement is expressly limited to the United States.

Defendants' position is misguided. It is irrelevant whether the non-compete provision in Slanina's Covenants Agreement applies to conduct outside of the United States. As the Magistrate Judge explained, the Defend Trade Secrets Act applies to conduct outside the United States in circumstances in which, as here, defendants are citizens or permanent resident aliens of the United States or organizations existing under the laws of the United States. 18 U.S.C. § 1837; *see also* ECF No. 66 at 13. Thus, the Court may enjoin Defendants from engaging in certain competitive conduct outside the United States under the Defend Trade Secrets Act, regardless of the terms of Slanina's non-compete provision. *See* 18 U.S.C. §§ 1836, 1837. The Court thus holds Defendants' eleventh objection is unfounded.

Defendants aver in their twelfth objection Paragraphs 5 and 7 of the suggested injunction violate 18 U.S.C. § 1836(b)(3)(A)(i)(I), which provides:

> **(3) Remedies.**—In a civil action brought under this subsection with respect to the misappropriation of a trade secret, a court may—
>
> > **(A)** grant an injunction—
> >
> > > **(i)** to prevent any actual or threatened misappropriation described in paragraph (1) on such terms as the court deems reasonable, provided

the order does not –

> **(I)**    prevent a person from entering into an employment relationship, and that conditions placed on such employment shall be based on evidence of threatened misappropriation and not merely on the information the person knows.

18 U.S.C. § 1836(b)(3)(A)(i)(I).

Defendants profess Paragraph 5 violates this statute because it prohibits Defendants from entering into an employment relationship with the specified individuals and entities. Defendants also suggest Paragraph 5 is ambiguous because the phrase "about the food disposal industry" could be interpreted as applying only to "communicating," thereby unreasonably enjoining Defendants from conducting business, assisting, or consulting with the listed individuals/entities about subjects unrelated to the food disposal industry. Further, Defendants proclaim Paragraph 7 violates 18 U.S.C. § 1836(b)(3)(A)(i)(I) because requiring Defendants to obtain approval from the Court before entering into employment relationships related to the food disposal industry would, as a practical matter, preclude all such employment.

Defendants' contentions are unsupported. Paragraphs 5 and 7 of the Magistrate Judge's suggested injunction do not constitute a blanket prohibition preventing Defendants from entering into any employment relationships. Rather, they enjoin Defendants from entering into certain employment relationships that are competitive with Plaintiffs based on Defendants' past behaviors. Further, the express language of 18 U.S.C. § 1836(b)(3)(A)(i)(I) contemplates certain restrictions on employment, *see id.*, and Defendants have cited no authority to support the position the restrictions in the suggested injunction are prohibited by the Defend Trade Secrets Act.

Additionally, the suggestion Paragraph 5 is ambiguous and could prevent Defendants from conducting business with the specified individuals unrelated to the food disposal industry is

unreasonable. The phrase "about the food disposal industry" is reasonably interpreted as modifying all preceding verbs in the sentence, and, therefore, the provision would enjoin Defendants from conducting business, assisting, consulting, or communicating with the listed individuals/entities only in regard to the food disposal industry.

Lastly, Defendants' assertion the requirement in Paragraph 7 obligating Defendants to obtain Court approval before entering into employment relationships related to the food disposal industry would in effect preclude Defendants from all such employment is unfounded. Defendants provide no explanation for this conclusory pronouncement. Because the Court is of the opinion the condition is appropriate given Defendants' previous behavior, it overrules Defendants' eleventh and twelfth objections.

In their thirteenth objection, Defendants contend the Magistrate Judge erred in recommending Paragraph 6 of the suggested preliminary injunction, which would enjoin Defendants from "[d]isparaging the plaintiffs and their principals, including Claude Theisen, in regard to the issues presented in this case." ECF No. 66 at 16. Defendants state they have never signed a non-disparagement agreement relating to Plaintiffs, and this provision of the suggested injunction would be an unconstitutional prior restraint on Defendants' free speech rights. Defendant also proffer the common law doctrines of defamation and tortious interference with contract adequately protect Plaintiffs.

A non-disparagement provision is absent from Slanina's and Basinger's Covenants Agreements, *see* ECF Nos. 1-6,1- 8, and the Court is unaware of any other agreement between Plaintiffs and any Defendants containing a non-disparagement provision. Without deciding whether Paragraph 6 of the Magistrate Judge's suggested preliminary injunction would violate the First Amendment, the Court holds this provision is unnecessary to preserve the status quo.

Because Plaintiffs failed to obtain non-disparagement agreements with Defendants, Defendants were free to disparage Plaintiffs during their employment. As the Magistrate Judge noted, however, there is evidence suggesting Defendants previously disparaged Plaintiffs in an attempt to manipulate the timing of a sale of EnviroPure to Plaintiffs' detriment. *See* ECF No. 66 at 6-7. Nevertheless, in the event Defendants attempt to disparage Plaintiffs to compete with Plaintiffs or otherwise violate their Covenants Agreements, Paragraph 8 of the Magistrate Judge's recommended injunction, which requires Defendants to "[c]omply with all obligations of their Covenants Agreements," adequately protects Plaintiffs and preserves the status quo pending an ultimate resolution of this case. As Defendants point out, the common law doctrines of defamation and tortious interference with contract provide further protection for Plaintiffs. Thus, the Court accepts Defendants' thirteenth objection and will, out of an abundance of caution, refrain from adopting Paragraph 6 of the Magistrate Judge's suggested preliminary injunction.

In Defendants' fourteenth and final objection, they insist the Magistrate Judge erred in recommending Plaintiffs post a $5,000 bond and rejecting Defendants' demand of a $2,940,000 bond to protect Slanina and a $75,000 bond to cover Basinger. Defendants avow the proposed injunction would have a significant impact on Slanina's future earnings potential and would destroy the possibility of a sale of EnviroPure. Defendants explain their requested bond of $2,940,000 regarding Slanina is based upon the balance remaining in Slanina's compensation plan, and the requested bond of $75,000 regarding Basinger is to cover her lost commission income. Defendants, relying on affidavits submitted by Slanina and Basinger, urge the Magistrate Judge erred in concluding Defendants failed to show bonds in the requested amounts are warranted.

The Magistrate Judge suggests the $5,000 bond Plaintiffs previously deposited with the

Clerk of Court is sufficient to protect Defendants.  *Id.* at 18.  He also recommends that, in the event any sales close on Basinger's open EnviroPure accounts, Plaintiffs be required to hold in escrow any commissions to which Basinger may be entitled until the parties agree on disbursement or further order of the Court.  *Id.*  The Court considers the Magistrate Judge's plan wise.

Security required in connection with a preliminary injunction order is to "pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. Civ. Pro. R. 65(c).  The security is not intended to allow a party to recover any damages from the moving party to which it thinks it is entitled.  Defendants have neglected to demonstrate bonds of $2,940,000 and $75,000 are warranted.

Slanina is not the owner of EnviroPure, ECF No. 38-2 ¶ 9, and he is therefore unentitled to any damages allegedly resulting from the destruction of the possibility of selling EnviroPure. Similarly, Slanina's employment with Plaintiffs was at will, ECF No. 1-6 at 6, and he was terminated on November 18, 2016, ECF No. 38-2 ¶ 70.  Thus, the amount Slanina could have allegedly received if he retained ongoing employment with Plaintiffs is an inappropriate measure for determining the security Plaintiffs must provide in connection with their requested preliminary injunction.  In the absence of compelling evidence to the contrary, the Court agrees with the Magistrate Judge the $5,000 bond previously posted by Plaintiffs is an appropriate amount to protect Defendants.

The Court also endorses the Magistrate Judge's proposal to require Plaintiffs to hold any commissions in escrow for any of Basinger's open accounts that might close until the parties agree on a disbursement or until a further Court order.  This plan ensures Basinger will be compensated for any commissions to which she might be entitled without requiring Plaintiffs to

post an unnecessary additional bond. Thus, the Court overrules Defendants' fourteenth objection.

After a thorough review of the Report and the record in this case under the standard set forth above, the Court overrules all of Defendants' objections except for their thirteenth objection, adopts the Report with the exception of Paragraph 6 of the recommended preliminary injunction, and incorporates the Report herein as modified. Therefore, it is the judgment of the Court Plaintiffs' Motion for Preliminary Injunction and Amended Motion for Preliminary Injunction will be granted as modified, and Defendants will be enjoined from the following pending final resolution of this case or further order of the Court:

1. Altering, erasing, deleting, destroying, or modifying any computer or computerized device or electronic storage device in their possession, custody, or control;

2. Using or disclosing the plaintiffs' trade secrets and property, including any data or information obtained from the plaintiffs or the successor from which the plaintiffs purchased the property, data, and information;

3. Developing, marketing, selling, or exercising any ownership or dominion over products or services in the food waste disposal industry in violation of their Covenants Agreements;

4. Operating or using <enviropuresystems.co.uk> or including any reference to EnviroPure or any of its products on <advantagreen.com> or in any other communication for purposes of dealing in products sold by EnviroPure or in competition with any product sold by EnviroPure;

5. Conducting any business with, assisting, consulting with, or communicating about the food disposal industry with Karen or Daniel Wordsworth, X-Met, Bond of London, or OMPECO or any employees, agents, or affiliates thereof;

6. Entering into any employment relationship with any person or entity for the purpose of developing, manufacturing, or selling any food disposal systems or related products without leave of the Court and upon such conditions as the Court may impose under the circumstances. This prohibition is based on this Court's finding of actual misappropriations and disclosures and the continued threat of the same and not based merely on the knowledge Defendants hold. 18 U.S.C. § 1836(b)(3)(A)(i)(I).

Further, the Court finds that each Defendant is a "natural person who is a citizen or

permanent resident alien of the United States, or an organization organized under the laws of the United States or a State or political subdivision thereof," and "an act in furtherance of the offense was committed in the United States." *Id.* § 1837. Accordingly, each restriction imposed in this Order applies both within and outside of the territory of the United States.

**IT IS FURTHER ORDERED** Defendants must take the following affirmative steps pending final resolution of this case or further order of the Court:

7. Comply with all obligations of their Covenants Agreements, including the cessation of all activities relative to the manufacture, distribution, sale, or marketing of food waste disposal systems and related products, including Biomix or any chemical providing the same or similar function. The parties agree Defendant Basinger is an independent sales representative for other product lines that are unrelated to food disposal and are not affected by this Order. To the extent Defendant Basinger may receive communications from any of her EnviroPure accounts, she will forward such communications to Plaintiffs;

8. Preserve all copies of communications and documents, whether in paper or electronic form, related to EnviroPure or any of its products, including but not limited to all documents and data obtained, generated, or discovered in the course and scope of Defendants' business and professional activities since December 1, 2012;

9. Preserve all communications and documents regarding Defendants' dealings with X-Met, Karen Wordsworth, Danny Wordsworth, Hubbard-Hall, Warehouse Associates, C.H. Robinson, AAA Bar & Catering, BN Green, Foodwastemachine.com, and any other person or entity with whom Defendants have communicated or dealt since January 1, 2013, regarding the marketing, manufacture, or sale of food disposal machines and related products, such as Biomix or similar chemicals;

10. Return all equipment and nondocumentary property, such as electronic devices, machines, parts, tools, etc. belonging to Plaintiffs that are still in Defendants' possession, custody, or control to Plaintiffs within five (5) days of the filing of this Order at Defendants' expense; and

11. Itemize for Plaintiffs and hold in trust all funds received from the sale of goods or services related to food disposal systems and related products that Defendants received from January 1, 2016, forward except any payments received directly from Plaintiffs.

**IT IS FURTHER ORDERED**,

12. The security Plaintiffs posted with the Clerk of Court in the amount of Five Thousand Dollars ($5,000) on November 22, 2016, see ECF No. 18, shall remain in place until further order of this Court. Additionally, in the event any sales close on any of

Defendant Basinger's EnviroPure accounts pending final resolution of this case or further order of the Court, Plaintiffs are directed to hold in escrow any commissions to which Defendant Basinger may be entitled for such sales until the parties can agree on disbursement of such amounts or upon further order of the Court. The Court determines these measures to be appropriate to protect the interests of any party found to have been wrongfully enjoined or restrained.

Because the Court will grant as modified Plaintiffs' Motion for Preliminary Injunction and Amended Motion for Preliminary Injunction without reference to the materials submitted in Plaintiffs' Motion to Supplement, and because the Court previously denied Plaintiffs' Second Motion for TRO, Plaintiffs' Motion to Supplement will be rendered moot.

## VI.    THE LAWYER'S OATH

The Court would be remiss if it failed to remind counsel of the Lawyer's Oath, which all members of the South Carolina Bar must take. It provides, in relevant part:

> I do solemnly swear (or affirm) that:
>
> . . . .
>
> I will maintain the respect and courtesy due to courts of justice, judicial officers, and those who assist them;
>
> To my clients, I pledge faithfulness, competence, diligence, good judgment, and prompt communication;
>
> To opposing parties and their counsel, I pledge fairness, integrity, and civility, not only in court, but also in all written and oral communications[.]

Rule 402(h)(3), SCACR.

Suffice it to say, the Court is of the opinion some of the actions of certain attorneys in this action have failed to adhere to the above provisions of the Lawyer's Oath. Such incivility tarnishes both the reputation of counsel and our honored profession. Further, it is a disservice to counsel's clients, the Court, and the cause of justice. Consequently, any attorney who hereafter

displays acts of incivility does so at his own peril.

**VII.    CONCLUSION**

Wherefore, based on the foregoing discussion and analysis, it is the judgment of the Court Basinger's Motion to Compel Arbitration is **GRANTED**, the Report is **ADOPTED AS MODIFIED**, and Plaintiffs' Motion for Preliminary Injunction and Amended Motion for Preliminary Injunction are **GRANTED AS MODIFIED**.  Plaintiffs are ordered to arbitrate their claims against Basinger, and such claims are stayed pending final resolution of them in arbitration.  Defendants are hereby enjoined and ordered to take certain affirmative steps as set forth above.  Further, Plaintiffs' Motion to Supplement the Record is rendered **MOOT**.

**IT IS SO ORDERED.**

Signed this 4th day of May 2017 in Columbia, South Carolina.

s/Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE